UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JEFFREY A. MYERS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 08-78-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | **MEMORANDUM OPINION** |
| of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Jeffrey A. Myers ("Myers") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10 and 11] Through this action, Myers seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he was not entitled to a Period of Disability, Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Myers.

**I.    BACKGROUND**

Myers protectively filed an application for a Period of Disability, DIB, and SSI on March 21, 2006. The claim was denied initially and upon reconsideration. Thereafter, Myers requested a hearing before an ALJ. On May 18, 2007, a hearing was conducted before ALJ James P.

Alderisio in London, Kentucky. During the hearing, the ALJ heard testimony from Myers and Dr. James H. Miller, a vocational expert. Thereafter, the ALJ issued a decision denying benefits to Myers. [Transcript ("Tr."), pp. 12-23] The ALJ concluded that Myers retained the residual functional capacity to perform light work with certain limitations. [Tr., p. 19] Myers' request for review was denied by the Appeals Council on February 12, 2008. [Tr., pp. 6-8]

At the time of the hearing, Myers was a 44 year-old individual with a sixth-grade education. [Tr., p. 14] He alleges disability beginning September 15, 2005, due to back pain, shoulder and neck pain, numbness in his legs and arms, nerves, headaches, depression, and mental retardation. [Tr., pp. 14-15, 226-228] He has past work experience as a logger/timber cutter, serviceman, and maintenance worker. However, the ALJ found that he was unable to perform any of his past relevant work because the occupational demands exceeded his residual functioning capacity. Specifically, the ALJ found that Myers had the following residual functional capacity:

> to perform light work except no climbing of ladders, ropes or scaffolds; no more than occasional stooping kneeling, crouching or crawling; and no exposure to hazardous machinery or vibrating machinery. The claimant also has a limited but satisfactory ability in dealing with supervisors, dealing with stress and maintaining attention and concentration.

[Tr., p. 19] Based on these findings, the ALJ concluded that Myers was not under a disability, as defined in the Social Security Act and regulations, from September 15, 2005 through the date of his decision. [Tr., p. 22]

## II.     LEGAL STANDARD

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b); 20 C.F.R. § 404.1520(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 416.920(c); 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d); 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f); 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the

record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.   DISCUSSION

Myers asserts that the Commissioner's decision denying benefits is not supported by substantial evidence. More specifically, he alleges that the ALJ erred in finding that he did not suffer from a severe mental impairment and failed to give sufficient weight to the opinions of his treating physician and consultative examiner in this regard. According to Myers, both Dr. Bernard Moses' opinion (treating physician) and Dr. Dennis Spjut's evaluation (consultative examiner) support a finding of severe mental impairment under Listing 12.05C. Further, Myers claims that the ALJ was required to include the alleged severe mental limitations in his hypothetical to the vocational expert.

The record reflects that Myers first made allegations of disabling psychological problems six months after he filed his disability application. However, because there was insufficient evidence in the record on his claims, he was referred to Dr. Spujt in September 2006 for a

consultative examination. [Tr., p. 16] Dr. Spujt conducted a mental status examination, and the test results showed a verbal IQ score of 70, a performance IQ score of 69, and a full-scale IQ score of 67. These scores fell within the mild mental retardation range. [*Id.*] Myers was further assigned a Global Assessment of Functioning scale of 52, indicating only moderate symptoms. [*Id.*] In addition, Dr. Spujt opined that, although Myers attained at least a fourth-grade reading ability, he was functionally illiterate and would have difficulty maintaining schedules, attendance, or sustaining regular routine in a competitive labor situation. [*Id.*]

Regarding the opinion of Myers' treating physician, Dr. Moses, the ALJ noted that Myers was first treated for anxiety in October 2006. However, the record fails to reflect any continuing course of mental health treatment. Dr. Moses also performed a mental assessment on April 16, 2007, indicating that Myers had seriously limited (but not precluded) abilities to deal with stress, maintain attention and concentration, interact with supervisors, and understand, remember, and carry out detailed, but not complex instructions. [Tr., pp. 206-08] Dr. Moses also opined that Myers had a limited but satisfactory ability to follow work rules, relate to co-workers, deal with the public, use judgment, understand, remember and carry out complex and simple job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. [*Id.*]

Listing 12.05C sets forth the requirements for a finding of mental retardation, in relevant part, as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

The Sixth Circuit has repeatedly clarified that a finding of presumptive disability under Listing 12.05C requires the claimant to satisfy the specific factors of paragraph C as well as the diagnostic description in the introductory paragraph. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (holding that "[a] claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder"). Therefore, to make a claim under Listing 12.05C, a claimant must prove the following: (1) the claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period (i.e., the diagnostic description);" (2) the record demonstrates a valid verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007); *see also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

The Court has examined the ALJ's evaluation of Myer's claims of disabling mental limitations and agrees with his findings and conclusions. In evaluating these claims, the ALJ considered Myer's live testimony, the objective medical and educational records, and the

evidence relevant to Myers' daily activities and adaptive functioning. The ALJ observed that "[t]he overall record fails to show any evidence of significant deficits in daily functioning due to mental disorders." [Tr., p. 17] The ALJ rejected the findings of Dr. Moses and Dr. Spujt relative to the mental health diagnoses, noting that they were not supported by the clinical evidence in the record. [Tr., p. 21] Rather, the ALJ adopted the findings of the state agency psychologists who found that the diagnosis of mild mental retardation was not supported by the developmental evidence and that Myers did not meet the requirements of Listing 12.05C. [Tr., pp. 171, 174] The state agency psychologists, however, did assess Myers with mild to moderate functional limitations. Accordingly, after reviewing all the evidence in the record, the ALJ concluded that Myers suffered from the severe impairment of borderline intellectual functioning and included the relevant limitations in his RFC. [Tr., pp. 14, 19]

In considering the severity of a claimant's medical impairment, an ALJ must determine whether the impairment or a combination of impairments, "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as physical functions; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; and use of judgment. 20 C.F.R. § 404.1521(b). Conversely, a non-severe impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 691 (6th Cir. 1985) (citations omitted).

In *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007), the Sixth Circuit held that a diagnosis of borderline intellectual functioning did not amount to mental retardation and that the lack of any deficiencies in adaptive functioning precluded a finding that the claimant was presumptively disabled under Listing 12.05C. *West*, 240 F. App'x at 698. In that case, the claimant had a verbal IQ score of 67 and a full scale IQ score of 66. However, the consultative psychologist diagnosed "only borderline intellectual functioning and adjustment disorder, not mental retardation." *Id*. at 699. Additionally, the psychologist noted that the claimant "appear[ed] to be capable of understanding and retaining simple instructions and maintaining concentration and attention skills necessary to complete basic tasks in a work environment," and "would not have difficulty interacting effectively with co-workers and supervisors nor would he experience significant difficulty dealing with a reasonable amount of work stress." *Id*. (internal quotations omitted). The Sixth Circuit concluded that "[t]his medical evidence indicates that West did not exhibit deficiencies in adaptive functioning, and thus supports the ALJ's conclusion that West did not meet or equal Listing 12.05(C)." *Id*.

Similarly, in *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003), the Sixth Circuit held that, although the claimant had a performance IQ score of 67, the ALJ correctly determined that she was not mentally retarded based on other evidence in the record. *Daniels*, 70 F. App'x at 872. According to the Court, "[i]n other words, the record indicates no findings that Plaintiff suffered from significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *Id*. The Court relied on the fact that none of the psychologists in the record concluded that the

claimant suffered from significantly subaverage general intellectual function or deficits in adaptive functioning in concluding that the ALJ's decision denying benefits was supported by substantial evidence.

Here, as in *West* and *Daniels*, Myers has been diagnosed with mild to moderate functional limitations, while retaining the ability to understand, remember, and carry out simple instructions and adapt to changes and pressures of routine settings. The ALJ found that Dr. Spujt's diagnoses of mild mental retardation was inconsistent with the other evidence in the record, as Myer's prior functioning and activities were greater than those of a mentally retarded individual. [Tr., p. 21] The ALJ noted that, "contrary to the diagnosis of Dr. Spujt, the evidence fails to indicate a history of decreased cognitive or adaptive functioning." [Tr., pp. 20-21] The state examiners also found that Myers did not suffer from marked deficiencies in adaptive functioning. [Tr., p.174]

In his decision, the ALJ thoroughly discussed the evidence regarding adaptive functioning and noted that,

> [i]n activities of daily living, the claimant has mild restriction. Relative to the determination of disability and in analyzing the criteria cited above, *activities of daily living* generally encompass general adaptive activities such as cleaning, shopping, cooking, taking public transportation, driving an automobile, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones, using simple household appliances, using small tools, and other self-care activities. In this case, all of the pertinent exhibits have been reviewed and the claimant's testimony has been fully considered. The overall record fails to show any evidence of significant deficits in daily functioning due to mental disorders. At the hearing, the claimant testified he was living with two small children. He admitted he cooks and he reported no problems in self-care activities. The claimant also admitted during his psychological consultative examination that he drove to the examination, completes household chores, listens to radio and watches television for 18-19 hours a day.

> In social functioning, the claimant has moderate difficulties. In the area of *social functioning*, the record shows that the claimant retains the capacity to interact appropriately and communicate effectively with others. The claimant is able to function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, and other facilities. Although Dr. Spujt indicated the claimant would have significant problems interacting with others, the claimant reported he does the grocery shopping, visits with relatives, and attends church services regularly. Furthermore, he demonstrated no abnormal social behaviors during the hearing or during his consultative examinations.

[Tr., pp. 18-18]

Additionally, although Myers argues that the ALJ improperly rejected the opinion of Dr. Spujt, it is clear that the ALJ gave Dr. Spujt's opinion the appropriate deference and rejected it in light of the weight of the evidence. Particularly, the ALJ found Dr. Spujt's opinion to be unpersuasive because it was inconsistent with objective evidence and the claimant's statements as to his daily activities. [Tr., p. 21] It is well-established that an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). Further, the ALJ's characterization of Dr. Spujt's relationship as a "one time examiner" is in accord with the directives of 20 C.F.R. § 404.1527(d). That section provides that in evaluating the opinion of a medical source, an ALJ must consider the following factors: (1) the nature and extent of the relationship; (2) the supportability of the medical source's opinion, such as medical signs and laboratory findings; (3) the consistency of the opinion; (4) specialization; and (5) any other relevant factors. 20 C.F.R. § 404.1527(d).

The ALJ also properly rejected Dr. Moses' opinion regarding Myers' disability and the degree of his ability to deal with stress, maintain concentration and attention, interact with supervisors, and understand, remember and carry out detailed but not complex instructions. The ALJ found that Myers was limited in these areas, but that his ability was satisfactory rather than "seriously limited." While some deference is accorded the findings of treating physicians, "[u]ltimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *see also* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your residual functional capacity . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.").

The "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary. The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record." *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002). In *Wilson v. Comm'r of Soc. Sec.*, the Sixth Circuit noted that a treating physician's opinion can be discounted when: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does

not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. §§ 404.1527(d)(2) (listed above).

In this case, the Court concludes that the ALJ properly considered all of the medical evidence presented regarding Myers' physical and mental impairments and functional limitations. The ALJ examined the medical evidence presented by all treating and consulting doctors, including Dr. Moses, and accepted Dr. Moses' opinion to a certain degree. However, because the claimant's own testimony regarding his work history and abilities contradicted the severity of the opinion of Dr. Moses, the ALJ found that Myers had a "limited but satisfactory ability in dealing with supervisors, dealing with stress and maintaining attention and concentration." [Tr., p. 19]

Based on the record, it is apparent that the ALJ considered all of Dr. Moses' opinions, adopted some of them, and concluded that the severity of the limitations were not supported by substantial evidence in the record, particularly those that were inconsistent with Myers' testimony at the hearing. The ALJ also properly rejected the opinion of Dr. Spujt in light of the contradictory evidence in the record. In particular, the ALJ noted that,

> [l]ikewise, I have considered the claimant's mental ability to perform work activity. Unfortunately, the medical evidence fails to reflect any course of mental health treatment, and he has failed to express regular complaints of psychological symptoms throughout his pursuit of medical care. The claimant did not mention psychological problems until six months after he filed his disability application. Mr. Myers has no history of psychiatric treatment or concerns and has not had, sought, or been referred for formal mental health treatment. There is no longitudinal history of formal mental health treatment and no history of psychiatric hospitalizations. . . . In addition, contrary to the diagnosis of mild mental retardation by Dr. Spujt, the evidence fails to indicate a history of decreased cognitive or adaptive functioning on behalf of the claimant. Thorough review of the record reveals that the claimant's prior functioning is greater than

-13-

> that of a mentally retarded individual. For example, he was able to obtain and maintain employment that was semi-skilled. As well, the remaining medical evidence, including treating physician office notes document the claimant's many daily activities and good mental status findings.

[Tr., pp. 20-21] The ALJ concluded that, "[a]fter careful consideration of the entire record, I find no evidence to support a finding of total disability based on any physiological, cognitive, or other mental disorder." [Tr., p. 21]

This Court agrees with the ALJ's findings and analysis, and the record clearly demonstrates that the ALJ's decision is supported by substantial evidence. Further, because the ALJ properly rejected Dr. Spujt's examining opinion regarding Myers' mental abilities, it was proper for him to not include these limitations in his hypothetical to the vocational expert. Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Thus, the central question is not whether the hypothetical question posed to the VE recounts all of the medical findings, impairments and conditions, but whether it is a fair, complete and accurate summation regarding the claimant's abilities and overall mental and physical state, based upon the available evidence and testimony. *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Felinsky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990).

Here, the ALJ posed alternative hypotheticals to the vocational expert at the time of the hearing, one including severely limiting mental limitations, and one including limited but satisfactory mental limitations. [Tr., p. 237] However, because the ALJ concluded after reviewing the record and Myers' testimony that he did not suffer from serious limitations, he adopted the vocational expert's findings as to the lesser limitations in his decision. Thus, the hypothetical was proper in light of the medical evidence in the record. And because this Court has already concluded that the ALJ's decision regarding the mental limitations is supported by substantial evidence, it also finds that the hypothetical posed to the vocational expert accurately reflected his abilities and limitations.

### IV.  CONCLUSION

The ALJ properly rejected the opinion of the one-time examiner, Dr. Spujt, as well as the severe limitations imposed by Dr. Moses because these opinions are contradicted by the substantial evidence in the record. The ALJ carefully and accurately reviewed all the evidence in the record and presented all relevant limitations in his hypothetical to the vocational expert. Accordingly, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence. For these reasons, it is hereby

**ORDERED** as follows:

(1)   Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**;

(2)   Plaintiff Jeffrey Myers' Motion for Summary Judgment [Record No. 10] is **DENIED**;

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 8th day of August, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge